Harper, J.
The first ground of the motion in arrest of judgement is, “ because the indictment docs not charge the crime in the words either of the act of 1740 or that of 1821.” The words of the act of 1821 are exactly pursued, with the exception that instead of the words “ wilfully, deliberately and maliciously did murder,” the indictment charges that the prisoner “ wilfully, deliberately and maliciously, did kill and mur- ‘ - - - der Such strict-This can hardly be seriously relied on. ness in pursuing the words of a statute has never been required, The rule is stated, 2 East. Pl. Cr. 985, that an indictment on a statute must set forth the charge in the very words of the statute describing the offence ; for equivalent words are not sufficient. But a superfluous description does not seem to be .. . . , tti* .. objectionable. Hawkins, vol. 2, ch. 25, §102, says, with respect to the recital of statutes, that “ the joining of words which are either wholly synonymous, or much of the same *460 SGllse> as signifying such things as usually include one another, &c.” is not fatal. See, to the same effect, Stark, Cr. Pl. 242.
But the second ground in arrest of judgement is principally rej¡ecj on ; <i Because it does not appear from the indictment whether the prisoner was indicted under the act of 1740, or that of 1821, or whether sentence was to be passed under the or the latter act, and each count concludes against the Aei alone.” This is supported -by the authority of the State v. Guy Raines, 3 M’C. 533, in which it was held by the judge who delivered the opinion of the Court, that an indictment for killing a slave should have concluded against the form of '^° Acts, and that having concluded against the form of the Act, this was good in arrest of judgement. Upon looking into the authorities upon which the judge relies for the support of .hjg opinion, it seems to me that it is more than questionable whether they do support it. Hawkins, vol. 2, ch. 25, §117, seems to incline to the opinion that in no case is it necessary to conclude against the form ot the otatuies, See also Stark. Cr. Pl. 255,256. But without questioning the authority of the State v. Raines, the indictment in the -present case differs from that, in charging the fact to have been done feloniously, which word was wanting in the former indictment. It is said that there are certain terms of art required in the charging of offences, which can be supplied by no periphrasis or circumlocution whatever; such as felónica “ in an indictment of any felony whatsoever.” 2 Haw. ch. 35, §55. But I take it to be clear that -the killing of a slave was made a felony by the act of 1821, and that it was not such under the act of 1740. It has been a matter of inquiry what are the distinctive characteristics of felony ; but there is no question but that at common law any offence which involved the forfeiture of lands and goods was a felony. This is said by Hawkins, vol. -1,-ch. 25. In the note to that chapter,it is said that there may be felonies which are not punished capitally, and offences not felony, which are .punished capitally ; yet it is said that the idea of felony “ is so generally connected with capital punishment, that we find •it hard to separate them.” And elsewhere, ch. 40, §2, it is said -by Hawkins, “ It seems clear that not only those crimes which are made felonies in express words, but also those which are decreed to have or'undergo judgement of life and member •by any statute, become felonies thereby, whether the word ‘felony’ -were omitted or mentioned.” There can be ho doubt, I presume, but that this is law in England ; and it is stronger ■in this State, where the 'Constitution prohibits the general forfeiture of lands and goods, and we have absolutely -no test of ■felony hut the nature of the punishment. Then under the act *461 oi‘ 1740, although the words “wilfully murder” are used, it is cloar that the killing of a slave was not felony. A pecuniary fine was imposed on the offence. At that time, it is to be remarked, there might be forfeiture of lands and goods. But the imposing of a limited fine was repugnant to the notion of a general forfeiture of lands and goods, and no one ever thought of such a consequence being incurred under the statute. Then if an indictment under that statute had charged the fact to have been done feloniously, this would have been bad, and good cause for arresting the judgement. There could be no felony under that statute. Where an indictment charges a party with having do'ne an actfeloniously, which the indictment itself shews to be but a trespass, it is said the Court will not arraign him. 2 Hawk. ch. 25, §62. And where an officer was in-dieted for feloniously permitting an escape, but the indictment did not shew the escape to be felonious by shewing that a felony had been committed and the nature of it, the judgement was arrested. Then if this indictment had charged the act to have been done, feloniously, against both statutes — that of 1740 as well ás that of 1821 — does it not follow that this would have been bad, and the judgement have been arrested '(
We-come next to the' grounds which are taken for a new trial. The first six of these may be considered together. They all relate to supposed objections -tojhe judge’s instructions 'to the jury, as to the nature of the offence under the statute. The judge states the prisoner’s counsel to have taken the ground, particularly from the use oí the word ‘deliberately' in the act, that there could be no conviction under the act, except upon express malice. The judge states that he overruled the objection, and instructed the jury that the term “ murder” being used, it was to be understood according to its •legal import, and that the meaning was -not restricted by the use of the word “ deliberately,” so as to -require proof of express malice. He charged that cases arising under the act were to be determined according to the principles and rules of the common law, and that he could admit no other distinction between the killing of white men and that of negroes, than this — that in the latter class of cases, a smaller degree of provocation would have the effect of extenuating or excusing, as the case might be. If the judge be right in these particulars, I presume there -can be no objection to his instructions as he has reported them.
The argument is, that the act has not simply declared that the murder of a slave shall -be punished with death, but that if any one shall “ wilfully, deliberately and maliciously” murder a slave, he shall be so punished; that it is a rule in the construction of statutes to give, if practicable, to every word *462 moan*I}S and effect,. and that the effect of the words) quoted must bo to make the offence under the act something different from the common law offence of murder. The.word ‘ deliberately’ is principally relied on, and the argument would geem to me to amount to this — that there can be no murder of a slave, unless in that class of cases which Blackstone (4 Com. 199, 200,) has distinguished as being characterized by express malice — which is evidenced by lying in wait, antecedent menaces, former grudges, concerted schemes, &c.
The general rule for the construction of statutes, is as contended for. Yet we know that statutes have often enacted the common law, and in such case the principles of the common law are resorted to for the purpose of giving them construction. It is said by Hawkins, bk. 1, ch. 17, §39, that “in doubtful cases, the reason of the common law ought to govern the construction of a statute.” And also that in the construction of a statute, “ words being no more than the law would have implied if they had not been used, operate nothing. Expressio eorum quae facile insunt nihil operaiur.” Now the general purpose of this act was certainly to make the murder of a slave the same offence as the murder of a freeman at common law. To constitute the offence of murder at common law, the homicide must be committed with “ malice aforethought,” and this is an indispensible ingredient of the offence. But the terms “ malice aforethought,” in their ordinary signification, and technically too, import that deliberation and pre-concerted purpose which appear in the instances enumerated by Blackstone. Then if the act had declared that he who should kill a slave with malice aforethought, should be deemed guilty of murder, this would have signified every thing that the terms of the act import, “ the words being no more than the law would have implied if they had not been used.”- But the law provides, for the purposes of justice, that the deliberate and preconceived purpose shall be inferred to have existed,, even when the jury may be satisfied that it did not in fact exist, as many other legal presumptions are made contrary to the actual fact. That which is equivalent to it, and which the law declares shall be regarded as the same thing, existed — - “the heart devoid of social duty, and fatally bent upon mischief.” If the depraved and wicked mind appeared in the action, this shall be regarded as malice against the individual.
Taking the whole act together, it is plain that the words used in the first clause of the act, and particularly the term “ deliberately,” were used in contra-distinction to the terms of the second clause, which provides for the offence of killing “in sudden heat and passion.” These words, “ sudden heat and passion,” are technical terms of the common law to describe *463 the offence of manslaughter ; and to the common law we must resort for their definition ; though the offence is not made manslaughter by the statute, a pecuniary fine only having been imposed on it. But the homicide is only extenuated to the of-fence of killing in sudden heat and passion, when there is an adequate provocation. Without this the passion and heat of blood are not supposed to exist. But suppose that on a sudden impulse, without any provocation at all hut the excitement of a perverse and wicked spirit, one should kill a slave, would any lawyer contend that this ivas a killing “in sudden heat and passion,” under the second clause of the act 1 Yet if it be not so, it is no offence at all, unless it be punishable under the first clause as deliberate and wilful murder.
if it be only in the case of express malice, evidenced by lying in wait, previous menaces, &c. that the killing of a slave amounts to murder, then the act would be rendered in a great degree nugatory. In the relations of the freeman and the slave, there is nothing to give rise to this long cherished hatred. As observed in argument, the collisions and competitions which create enmity between persons of similar condition in life, have little effect between these. What is chiefly to be guarded against, are the sudden impulses of causeless and reckless passion. Suppose some of the cases which the authorities enumerate as instances of implied malice — that in attempting to commit another felony, a man kills a slave, or that having laid poison for a freeman, it is taken by a slave who dies, can any reason be conceived why these should be exempted from the operation of the act ?
Blackstone, in the passage before referred to, seems to re-gavd the killing upon a sudden impulse, though wilful and with no provocation, or but slight provocation, as an instance of implied malice. But Hawkins, perhaps a higher authority in matters of criminal law, enumerates it among the cases of express malice. Book 1, ch. 31, sec. 18. The cases of implied malice, he states, are those in which the party killing ivas doing an unlawful act, “principally intended for some other purpose, and not to do a personal injury to him in particular who happens to be slain.” And this agrees with the definition which is given by Starkie in his treatise on evidence, Pt. IV, p. 904, of actual or express malice. “In the next place the term malice is frequently used to signify the actual state or disposition of the mind of the agent, with which ho did a particular act, as that he did it with a view to prejudice a particular individual, either generally or in some particular manner. In this sense it is usually termed actual, express or positive malice, and perhaps it may not improperly be (ermed malice in fact, in contra-distinction to malice in law, which is *464 a mcre inference of law.” In the case before us, tbei’e can be no doubt at all but that it was the prisoner’s intention to injure the slave, and no reasonable doubt but that it was his in» tentjon t0 jy jone without sufficient provocation, then ([18 act Y/as done with express malice, and by construction of law, with deliberation. In the American edition of Starkie, Pt. IV. p. 964, n. 1, several American authorities on this subject are collected.
“Where it appears from the whole evidence, that crime was at the moment, deliberately or intentionally executed, the killing is murder. Commonwealth v. Dougherty, 1 Browne’s Rep. App’x. 221. It is sufficient, if the circumstances of wilfulness and deliberation were proved, though they arose and were generated at the period of the transaction. Ibid. Pennsylvania v. M’Fall.”
“If the party killing had time to think, and did intend to kill for a minute, as well as an hour or a day, it is wilful and premeditated killing. Commonwealth v. Smith, and Commonwealth v. O’Hara, Wharton’s Digest, 148.”
But as explained by the prisoner’s counsel in argument, the objections to the judge’s instructions related rather to the method of proof than to the character of the offence. It is urged that the burden of proof was on the State,-to shew that the fact was committed in the manner described by the statute. That is to say, I suppose, it should have been proved to have been done wilfully — more particularly, that it was done deliberately, as well as maliciously. There is some difficulty in conceiving this objection. If the intention of the statute was to put the murder of a slave in all respects on the footing’ of the murder of a freeman at common law, then it should seem to follow that the method of proof is put on the same footing also; and this is what I have already considered. It is hardly necessary to quote the familiar doctrine “ that whenever it appears that a man killed another, it shall be intended prima facie, that he did it maliciously, unless he can make out the contrary, by shewing that he did it on a sudden provocation, &c.” 1 Hawk. ch. 31, §32. Prove that the prisoner has killed a slave, and you have proved, prima facie, that he has done it wilfully, deliberately and maliciously. Indeed this is no less an inference of nature and of reason than of law. Every man is of course supposed to have intended what he has done, if there be nothing to shew the contrary. Suppose then the mere fact of killing to be shewn and nothing else, you must either infer that it was done wilfully and by design, (that is to say, in contemplation of law, deliberately-and maliciously,) or you must presume that there existed circumstances to extenuate or excuse it — that is to say, you must presume positive *465 facts, without any evidence whatever to establish them. If it were necessary to prove deliberation, how long must the party be shewn to have brooded over his purpose ? A minute, an hour or a month 1 Such a construction as is contended for, would, it seems to me, set every thing afloat and render the execution of the law utterly impracticable. But, indeed, if there were any thing in this view of the law, the prisoner has still nothing to complain of. There were eye-witnesses to all the circumstances of the transaction, and, as far as the imperfection of human testimony will admit, these were fully detailed to the jury. As to the dangerous consequences apprehended to owners, overseers, &c. who may be compelled by acts of mutiny, or necessity of self-defence, to take the life of a slave, when there is no witness to attest the circumstances, I think they are sufficiently guarded against by the decision in the case of the State v. Raines.* By that decision, the privilege afforded to such persons of giving testimony to exculpate themselves by the act of 1740, is allowed in a prosecution under the act of 1821.
This is the first instance of conviction under the act of 1821 that has been brought before us. I have, therefore, considered the questions made with more deliberation than their intrinsic difficulty might seem to require. The utmost consideration is also due to every case in which the life of a human being is involved. It is not necessary to advert to the other grounds taken for a new trial. They consist either of objections to the charge of the judge, in that he did not express an opinion to the jury upon matters of fact, upon which he Was not in any manner called on to express an opinion, or of exceptions to the finding of the jury in relation to matters of evidence, which it was exclusively their province to decide, and upon which we have not the slightest reason to conclude that they decided wrongly. The several motions are therefore dismissed.
Johnson and O’Neall, Js. concurred.

 3 M’C. 533.